UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHERNENA BUSH, SAMANTHA HANSEN, SANTINO TAP, and RHONDA MOSES, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | Case. # __:__-cv-__ |
| OMAHA HOUSING AUTHORITY, a Nebraska Municipal Corporation, | CLASS ACTION COMPLAINT & JURY DEMAND |
| Defendant. | |

## OVERVIEW

1.    Plaintiffs are a proposed class of residents of Omaha Housing Authority's (OHA) public housing who have very low incomes and were denied due process because of the unlawful actions and omissions of Defendant.

2.    OHA was created to address the acute shortage of affordable housing for low-income families in Omaha and provides 2,500 units of public housing in the community.

3.    Pursuant to federal law, OHA is authorized to charge extremely low-income families a minimum monthly rent of $50, but if a family is experiencing a financial hardship, OHA must waive that rent minimum as a "hardship exemption."

4.    Since at least 2017, OHA charged tenants who have very low or no income a monthly minimum rent of $50 but did not inform or give those tenants the statutorily required hardship exemption of that rent, even when they were

1

threatened with eviction. Instead, OHA hid the information about the hardship exemption from tenants, demanded the minimum rent and late fees, and even filed eviction proceedings against them when they could not pay.

5.     Federal law provides a non-exhaustive list of situations where a household meets the definition of "financial hardship" and is exempt from the minimum rent, including a decrease in income due to loss of employment, a change in household composition, or when a family would otherwise face eviction for nonpayment of the minimum rent. However, OHA's policy and practice not to inform tenants of the hardship exemption, or otherwise apply it, ensures that eligible tenants were not offered the hardship exemption and were regularly threatened with eviction.

6.     OHA's policies have deprived eligible households of hardship exemptions and resulted in financial gain for the agency.

7.     As a result of its hardship exemption policies, OHA has charged or collected from its residents minimum rent payments, late fees, attorneys' fees, and costs to which OHA was not entitled. OHA's pursuit and collection of these amounts has caused severe financial strain, stress, and undue hardship for Plaintiffs and tenants charged minimum rent.

8.     OHA also did not offer tenants faced with adverse actions, such as a decision to increase the rent portion a tenant must pay, the right to request an opportunity to be heard, generally in the form of an informal and formal hearing, as required by federal law. Critically, OHA's notices to tenants, from as far back as

October 2016 through approximately September 2023, failed to adequately inform tenants of their right to an informal and formal hearing, often referred to as "grievance rights," to challenge the adverse action against them.

9.      As a result of its "no notice of grievance rights" policy, OHA charged and collected rent payments and other charges from tenants, including Plaintiffs, while denying them federally mandated hearing rights to redress their grievances. OHA's actions and omissions have in turn caused financial strain, stress, and undue hardships for OHA residents.

10.     All combined, OHA violated and continues to violate federal law, including the United States Housing Act of 1937, and the Due Process Clause to the United States Constitution. These actions and omissions also violate OHA's contractual obligations contained in the residential leases between OHA and the residents.

11.     Plaintiffs seek to impose liability against OHA and injunctive relief to change OHA's policies.

12.     The harm to Plaintiffs and the putative class is ongoing and continuing.

## PLAINTIFFS AND THE PUTATIVE CLASS

9.      Plaintiffs and the putative class are individuals who lived in public housing units owned, controlled, or operated by OHA from 2017 to the present and who are harmed by the OHA's failure to: (1) comply with its statutory duty to operate a system that ensures eligible tenants receive a hardship exemption to the

minimum rent requirement, and (2) provide tenants with adequate notice of the process for requesting an informal and formal hearing when there is an adverse action against them.

10.    Plaintiffs and the putative class seek prospective declaratory, injunctive, and other equitable relief that includes changes to OHA's policies and procedures, withdrawal of threatened and actual terminations of housing assistance based on nonpayment of the minimum rent and/or charges and fees or terminations where the tenant was not given notice of a right to an informal or formal hearing, recalculation of Plaintiffs' past and present rent, charges, and fee obligations, and reimbursements or account adjustments based on those recalculations.

11.    OHA's actions and policies have been applied uniformly to Plaintiffs and the putative class as a whole.

12.    OHA's actions have caused and will cause Plaintiffs and the putative class members imminent and irreparable injury.

13.    Plaintiffs have no adequate remedy at law.

## JURISDICTION AND VENUE

14.    This action is brought under 42 U.S.C. § 1983 and under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

15.    The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) for the claims arising under the Constitution and federal law.

16.    The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

17.    Venue is proper because the acts or omissions occurred in this district. 28 U.S.C. § 1391(b).

## PARTIES

18.    Shernena Bush is an OHA public housing tenant who has resided in OHA public housing since November 23, 2015.

19.    Samantha Hansen is an OHA public housing tenant who has resided in OHA public housing since December 2021.

20.    Rhonda Moses is a former OHA public housing tenant who resided in OHA public housing from September 2017 until October 2023.

21.    Santino Tap is an OHA public housing tenant with two minor children who has resided in OHA public housing since July 2019.

22.    Defendant OHA is the governmental agency that contracts with the Department of Housing and Urban Development (hereinafter "HUD") to provide public housing to people with qualifying incomes in Douglas County, Nebraska.

23.    OHA is a political subdivision of the state of Nebraska.[1] It operates federally funded public housing for the City of Omaha, pursuant to 42 U.S.C. § 1437 *et. seq.*

## LEGAL FRAMEWORK

*Federal Law & Regulations Regarding Hardship Exemption*

24.    Federal public housing was established under the United States Housing Act of 1937 ("Housing Act") to promote the policy of "provid[ing] decent and

---

[1] Neb. Rev. Stat. § 71-1575(16).

affordable housing for all citizens."[2] Under this framework, public housing authorities like OHA receive federal financial assistance to provide public housing to low-income families.

25.     In 1969, Congress enacted the Brooke Amendment, which limited each public housing resident's rent payment to no more than 25% of the household's monthly adjusted income.[3] In 1981, a tenant's rent contribution was increased to 30% of the adjusted monthly household income, 10% of the monthly gross income, or the portion of the household's welfare assistance payment, if any, that is specifically designated for housing costs.[4]

26.     In 1998, Congress subsequently passed the Quality Housing and Work Responsibility Act of 1998 ("QHWRA").[5] As relevant here, QHWRA authorized PHAs to impose monthly minimum rents of up to $50 but required that PHAs grant immediate exemptions to that minimum rent in cases of "financial hardship."[6]

27.     QHWRA defines "financial hardship" to include but not be limited to situations in which: (1) the family has lost eligibility or is awaiting an eligibility determination for governmental assistance; (2) the family "would be evicted as a result of the imposition of the minimum rent requirement"; (3) the family's income

---

[2] 42 U.S.C. § 1437(a)(4).
[3] Housing and Urban Development Act of 1969, Pub. L. No. 91-152, § 213(a), 83 Stat. 389.
[4] Housing and Community Development Amendments of 1981, Pub. L. No. 97-35, § 322, 95 Stat. 400 (codified at 42 U.S.C. § 1437a(a)).
[5] Pub. L. No. 105-276, § 501 et seq., 112 Stat. 2518 et seq. 37.
[6] Id., § 507, 112 Stat. 2524-2525 (codified at 42 U.S.C. §1437a(a)(3)); see also 24 C.F.R. §§ 5.628(a) and 5.630(a).

has decreased because of changed circumstances; or (4) there has been a death in the family.[7]

28.    If a financial hardship is temporary in nature, the Housing Act requires PHAs to observe a 90-day period during which PHAs may not evict residents for nonpayment of rent.[8] If the financial hardship is long term, the PHA "must exempt the family from the minimum rent requirements so long as such hardship continues."[9]

29.    In 2020, HUD issued guidance to PHAs regarding when they should grant hardship exemptions. HUD directed PHA's staff to "spread the word" about minimum hardship exemptions and emphasized that housing authorities had "flexibility to establish a minimum rent between $0 and $50 per month."[10]

30.    In 2021, the HUD Exchange issued a "Public Housing Minimum Rent and Hardship Requirements Toolkit," to guide PHAs on how to properly implement the hardship exemption. The toolkit includes fact sheets about the hardship exemption and suggested outreach templates such a doorhangers and postcards to inform tenants of their right to receive a hardship exemption.[11] The HUD Exchange "Tip Sheet For PHAs on Using the Minimum Rent Toolkit Resources" states that

---

[7] Pub. L. No. 105-276, § 507, 112 Stat. 2525 (codified at 42 U.S.C. §1437a(a)(3)(B)(i)).
[8] 42 U.S.C. § 1437a(a)(3)(B)(ii). See also 24 C.F.R. § 5.630(b)(2)(i)(C).
[9] 42 U.S.C. § 1437a(a)(3)(B)(ii). See also 24 C.F.R. § 5.630(b)(2)(i)(C).
[9] 24 C.F.R. § 5.630(b)(2)(iii)(B).
[10]U.S. Department of Housing and Urban Development, "Assisting Housing Choice Voucher and Public Housing Tenants in Reducing Accrual of Rent Owed," https://www.hud.gov/sites/dfiles/PIH/documents/PH_HCV_reducing_back_rent_accrual_factsheet.pdf
.
[11] HUD Exchange, Public Housing Minimum Rent and Hardship Requirements Toolkit, https://www.hudexchange.info/programs/public-housing/public-housing-minimum-rent-and-hardship-exemption-requirements-toolkit/.

PHAs are not required to adopt a form nor is a household required to complete a form in order to request the hardship exemption."[12] In other instances, the HUD Exchange recommended that PHAs inform tenants of their right to minimum rent upon admission, each re-examination, and through direct conversations with tenants.[13]

31.     In 2023, as a part of proposed rulemaking regarding a minimum 30-day notice requirement under the CARES Act, HUD reminded covered housing providers, including public housing authorities, that "HUD-assisted households can also request a hardship exemption" and that "the PHA" must "[allow] the household to pay as little as zero dollars in rent if the household has experienced a qualifying financial hardship."[14]

*OHA's Policies Regarding the Hardship Exemption*

32.     Currently, approximately 30% of OHA's public housing households—about 750 families—pay the minimum monthly rent of $50.[15] OHA has had the minimum rent policy in place since at least 2006.[16]

---

[12] https://files.hudexchange.info/resources/documents/PIH-Minimum-Rent-and-Hardship-Exemption-Toolkit-Tip-Sheet-English.pdf (last visited May 24, 2024).
[13] HUD Exchange, "Public Housing Minimum Rent and Hardship Exemption: Instructional Video," YouTube, https://www.youtube.com/watch?v=kFz_vIjPzLk (Dec. 22, 2021).
[14] HUD Proposed Rule on Lease Termination: 88 Fed. Reg. 83877, 83885 (proposed Dec. 1, 2023)
Jeremy Turley, "Extremely poor public housing tenants are entitled to rent exemptions. In Omaha, they got eviction notices." Flatwater Free Press (Dec. 20, 2023), https://flatwaterfreepress.org/extremely-poor-public-housing-tenants-are-entitled-to-rent-exemptions-in-omaha-they-got-eviction-notices/.
[16] Omaha Housing Authority's Admissions and Continued Occupancy Policy, Ch. 6, § 1 (2006).

33.    Under OHA's public housing Residential Lease, the tenant's rent "shall be determined by OHA in compliance with the HUD regulations and requirements and in accordance with OHA's Admissions and Occupancy Policy."[17]

34.    OHA's public housing Residential Lease does not inform tenants about the minimum rent hardship exemption or how they may apply for the exemption.

35.    On information and belief, OHA's Residential Lease has materially been the same since at least 2007.

36.    The Admissions and Continued Occupancy Policy (hereinafter "ACOP") states that "[t]he PHA must ensure compliance with federal laws, regulations and notices and must establish policies and procedures to clarify federal requirements and to ensure consistency in program operation[,]" including the Housing Act and its implementing regulations setting forth the minimum rent and hardship exemption requirements. [18]

37.    OHA's previous ACOP that was used in May 2008 explicitly provided:

    "The PHA will notify all participant families subject to minimum rent of their right to request a hardship exemption under the law."[19]

38.    Sometime after 2006, OHA changed its ACOP, omitting the above language that required notice to tenants of their right to request a hardship exemption to their minimum rent obligation.

---

[17] Exhibit A, Housing Authority of the City of Omaha Residential Lease 2024, p. 2, ¶5.
[18] OHA Admissions and Continued Occupancy Policy (ACOP), June 2023, 1-8, https://ohauthority.org/wp-content/uploads/2024/01/ACOP-Rv.6.2023.pdf.
[19] OHA Admissions and Continued Occupancy Policy (ACOP), June 2001, Ch. 6-1, https://web.archive.org/web/20081121035841/http://www.ohauthority.org/publichousing/ACOP/ACOP_2006/ACOP06.pdf.

39.     OHA's current ACOP is a document 282 pages long. The ACOP addresses the hardship exemption on page 2-110 of the ACOP and states that "If the PHA establishes a minimum rent greater than zero, the PHA must grant an exemption from the minimum rent if a family is unable to pay the minimum rent because of financial hardship."[20]

40.     The ACOP does not include information of how tenants can avail themselves of the hardship exemption or how or when OHA will inform tenants of the hardship exemption.

41.     On information and belief, prior to October 2023, OHA had an "only on request policy" under which a hardship exemption was considered only if tenants requested it using OHA forms; OHA otherwise took no active steps to inform residents that they may be eligible for the hardship exemption, make the forms available, or make minimum rent tenants aware the policy existed if they fell behind in paying rent.

42.     OHA, through its annual income certification, knew that tenants with very low incomes would not be able to pay rent. Yet, because of OHA's policy not to offer the hardship exemption, it did not inform these tenants about the hardship exemption and their right to request it.

43.     Even after tenants with very low incomes informed OHA that they could not pay the $50 minimum rent or asked OHA employees how they were

---

[20] Admissions and Continued Occupancy Policy, Housing Authority of Omaha, June 2023, https://ohauthority.org/wp-content/uploads/2024/01/ACOP-Rv.6.2023.pdf.

expected to pay rent, OHA employees remained silent as to the tenants' right to request a hardship exemption. Despite being presented with tenants' circumstances that clearly fit within the statutory hardship exemption, OHA offered no information on the hardship exemption and sometimes even suggested that tenants apply for help with their rent from another agency.

44.    On information and belief, because of OHA's policy not to offer the hardship exemption, few hardship exemptions have been made or approved.

45.    Sometime between October and December of 2023, after public outcries over the threatened eviction of many public housing tenants, OHA slid the hardship exemption form beneath some minimum rent tenants' doors.

*Federal Law and Regulations Regarding Adverse Actions*

46.    Public housing tenants are entitled to receive notice of their right to a grievance procedure when an adverse action is made against them. 42 U.S.C. § 1437d(k) requires:

> "each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will—
> (1)    be advised of the specific grounds of any proposed adverse public housing agency action;
> (2)    have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (1);
> ..."

47.    The PHA must include in the lease certain obligations, including provisions regarding adverse actions set out in federal regulations:

> (i)    To notify the tenant of the specific grounds for any proposed adverse action by the PHA. (Such adverse action includes, but is

11

not limited to, a proposed lease termination…or imposition of charges for maintenance and repair…

(ii)    When the PHA is required to afford the tenant the opportunity for a hearing under the PHA grievance procedure for a grievance concerning a proposed adverse action:

(A)    The notice of proposed adverse action shall inform the tenant of the right to request such hearing.[21]

48.    HUD's Public Housing Occupancy Guidebook explains that lease provisions regarding rent determinations "must note that the family is entitled to an explanation of the PHA's determination of rent…and that the tenant may request a hearing under the PHA's Grievance Procedure if he or she disagrees with the PHA's determination."[22] It goes on to clarify "…that the right to a grievance hearing applies whether a tenant's rent is increased or decreased."[23]

*OHA's Policies Regarding Adverse Action*

49.    OHA's lease tracks the language required by federal regulations stating on page 7, ¶ h of the lease that OHA must notify the tenant of specific grounds for any adverse action and inform the tenant of the right to a grievance procedure.[24]

50.    From at least 2017 through September 2023, when OHA determined or redetermined a tenant's rent, it did not inform the tenant of their right to dispute the calculation or be entitled to a formal or informal grievance.

---

[21] 24 C.F.R. § 966.4(8).
[22] U.S. Department of Housing and Urban Development, Public Housing Occupancy Guidebook, June 2022, Ch. 17, p. 194.
[23] Id.
[24] Exhibit A, Housing Authority of the City of Omaha Residential Lease Agreement.

51.     After a series of articles appeared in a local news site describing OHA's practices of not informing public housing tenants of their right to request a grievance procedure, OHA sent a letter to all public housing tenants on December 28, 2023, acknowledging that

> "[p]reviously, OHA's rent determination letters did not include information regarding your rights to an explanation and to grievance procedures…. This letter is to inform you that, if you do not agree with a current or past rent determination…you may request that OHA provide an explanation and grievance procedures regarding such rent determination. Please contact OHA by January 31, 2024."[25]

52.     OHA did not provide any more information to tenants on what challenging a past rent determination would mean. For example, OHA did not inform tenants that their rent may have been miscalculated for a span of years and they may be entitled to a substantial rent reimbursement.

*Plaintiff Shernena Bush*

53.     Plaintiff Shernena Bush has been an OHA resident for seven years.

54.     Throughout her tenancy Ms. Bush had zero income and has paid the minimum rent of $50.00 per month for nearly the entire time she resided at her unit.

55.     Ms. Bush had her rent redetermined at least annually since she began her tenancy with OHA.

56.     On numerous occasions, she asked various representatives of OHA how she would be able to pay her rent if she had zero income.

---

[25] Exhibit B, OHA Letter to Tenants, dated December 28, 2023.

57.    Despite her inquiries with OHA officials about how she could pay her rent with no income, OHA staff never informed Ms. Bush of the right to seek a hardship exemption from minimum rent.

58.    Ms. Bush attempted many strategies to pay her rent, including selling her plasma. She was required to cease this method of obtaining funds to pay rent when her blood's iron level was too low to accept her plasma.

59.    On other occasions family members were sometimes able to assist Ms. Bush, but because their financial help came late, she often incurred late fees.

60.    As a result of OHA charging her minimum rent and OHA's policy not to offer or tell her about the hardship exemption, Ms. Bush has been threatened with eviction on numerous occasions.

61.    Even though a tenant's risk of eviction is grounds for a hardship exemption, Ms. Bush was sued by OHA for eviction from the premises for non-payment of rent twice in 2023 for nonpayment as rent, as described below.

    61.1.    *Omaha Housing Authority v. Shernena Bush,* County Court, Douglas County, Nebraska, CI 23-1150, filed on January 20, 2023. Judgment was vacated and the case was dismissed on February 27, 2023, after Ms. Bush paid $734 with rental assistance.

    61.2.    *Omaha Housing Authority v. Shernena Bush*, County Court, Douglas County, Nebraska, CI 23-16913, filed on August 29,

2023. Judgment was vacated and the case was dismissed on October 20, 2023.

62.    At one point after the eviction cases were filed, an OHA employee suggested that she apply for general assistance funds from Douglas County General Assistance. However, the employee remained silent on the hardship exemption.

*Plaintiff Samantha Hansen*

63.    Plaintiff Samantha Hansen has been an OHA resident since December of 2022.

64.    For the most of her occupancy of her public housing units, Ms. Hansen has had $0 income, except for three very short periods when she was employed.

65.    After each annual review Ms. Hansen's rent was set at the minimum rent of $50.00, and each notice of rent determination failed to notify her of her right to request hardship exemption or her right to request a grievance hearing.

66.    OHA staff never provided verbal or written notification of her right to request a hardship exemption from paying minimum rent. On numerous occasions, OHA staff remained silent about her right to apply for a hardship exemption, even after Ms. Hansen repeatedly asked OHA staff how she would be able to pay her rent if she had zero income.

67.    Instead, OHA staff told her she would "just have to pay it."

68.    OHA filed two eviction cases against Ms. Hansen in 2023 for nonpayment of rent. These cases were as follows:

15

68.1.  *Omaha Housing Authority v. Samantha Hansen*, Douglas
County, Nebraska at Case No. CI-23-5813, for non-payment of
rent. This case was filed on March 28, 2023, and dismissed on
May 11, 2023, after Ms. Hansen, with the aid of a rent
assistance program, paid $2048.00 for rent, late fees, attorney's
fees, and charges related to a door replacement, which was not
previously disclosed until the morning of the eviction hearing.

68.2.  *Omaha Housing Authority v. Samantha Hansen,* Douglas
County, County Court, Nebraska at Case No. CI-23-18479, for
non-payment of rent. This case was filed on September 21, 2023,
and dismissed on October 6, 2023. No payment was made.

69.     On November 16, 2023, after getting advice from her attorney, Ms.
Hansen submitted OHA's Hardship Exemption from Minimum Rent Request Form
to OHA.

70.     Ms. Hansen's hardship exemption was granted on a temporary basis
on December 17, 2023. Rent continued to accrue during the time her request was
reviewed.

71.     On February 29, 2024, Ms. Hansen was granted the hardship
exemption from minimum rent and her rent was reduced to $0 per month effective
November 2023.

72.     However, OHA did not review Ms. Hansen's rent over the entire period
she resided in public housing to determine whether she was previously eligible for

the hardship exemption and should be relieved any of the previous minimum rent or late fees incurred prior to November 2023.

*Plaintiff Santino Tap*

73.    Plaintiff Santino Tap has been an OHA resident since July of 2019.

74.    During his tenancy, OHA raised Mr. Tap's rent multiple times. Mr. Tap often told OHA staff that he disagreed with those rent increases. In response, OHA staff told him he could move.

75.    Not until the December 28, 2023, mass letter to residents did Mr. Tap learn of his right to dispute rent adjustments.

*Plaintiff Rhonda Moses*

76.    Plaintiff Rhonda Moses was an OHA resident from September 2017 until October 2023.

77.    Ms. Moses had her rent redetermined at least annually since she began her tenancy with OHA.

78.    During her tenancy, OHA raised Ms. Moses's rent on many occasions.

79.    Despite these rent adjustments, OHA did not provide Ms. Moses with the opportunity to dispute a rent calculation.

80.    In 2023, OHA brought two eviction cases against Ms. Moses, which are described below.

> 80.1.    *Omaha Housing Authority v. Rhonda R. Moses,* Douglas County Court, Nebraska, CI 23-3316, filed on February 21, 2023, and dismissed on OHA's own motion on March 7, 2023; and

80.2. *Omaha Housing Authority v. Rhonda R. Moses,* Douglas County Court, Nebraska, CI 23-16917, which was filed on August 29, 2023, and dismissed on OHA's own motion on September 12, 2023. Ms. Moses moved out shortly afterwards.

81.     Because of OHA's repeated actions to evict her for non-payment of rent, and failing to provide her with the opportunity to dispute the rent calculation, Ms. Moses felt she could no longer remain in public housing. In 2023, she surrendered her public housing and moved into private housing.

## CLASS ACTION ALLEGATIONS

### *Class Information*

82.     This class action is brought on behalf of Plaintiffs Shernena Bush, Samantha Hansen, Santino Tap, and Rhonda Moses on behalf of themselves and others similarly situated pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

83.     This class action is brought on behalf of two (2) separate classes: the Minimum Rent – Hardship Exemption Class, made up of current and former tenants who did not receive information or given an opportunity to apply for the hardship exemption; and the Adverse Action Class, made up of current and former tenants who were not informed of their right to request a hearing following an adverse action such as an initial or subsequent rent determination.

83.1. **Class 1 – Minimum Rent Class.** This class is defined as "All past and current public housing tenants of OHA who resided in those

18

units whose rent is now, has been during the last five (5) years, or will be set at the federally authorized minimum rent of $50 per month."

83.2. **Class 2 – Adverse Action Class.** This class is defined as "All past and current public housing tenants of OHA who resided in those units who received an initial rent determination or subsequent rent determination that did not advise tenants of their federally mandated right to request a hearing.

*Certification of Class*

84. **Numerosity.** The classes are so numerous that joinder of all members is impractical.

84.1. *Minimum Rent Class.* There are approximately 2,500 households in OHA's public housing properties and all of them are entitled to have a lawful and effective hardship exemption policy and procedure in place should they experience a financial hardship. Currently, based upon a recent story in a local publication that OHA confirmed was accurate, approximately 30% of these units or 750 families are on minimum rent.

84.2. *Adverse Action Class.* There are approximately 2,500 public housing households, all of whom had a rental determination or rental redetermination and were entitled to a grievance procedure to ensure that their rent was correctly calculated.

19

85.    For both classes, class members are individuals who would not have the time or resources to pursue their claims on their own.

86.    **Commonality.** Common questions of fact and law affect each class:

86.1.  *Minimum Rent Class.*

86.1.1.    Whether OHA violated the Housing Act by having a policy of not timely and effectively informing minimum rent tenants of their right to seek a hardship exemption;

86.1.2.    Whether OHA denied minimum rent clients due process regarding their right to request a hardship exemption;

86.1.3.    Whether OHA had a policy of evicting minimum rent tenants it knew or should have known were eligible for the hardship exemption, in violation of 42 U.S.C. § 1437a(a)(3)(B); and

86.1.4.    Whether OHA breached its public housing lease with class members by determining rent amounts in violation of HUD regulations.

86.2.  *Adverse Action Class.*

86.2.1.    Whether OHA violated the Housing Act by having a policy which failed to timely inform tenants who had a rent determination or redetermination of their right to request a hearing;

86.2.2.     Whether OHA denied public housing tenants due process regarding their right to request a hearing for rent determinations or other charges against their accounts; and

86.2.3.     Whether OHA breached its public housing lease with class members by not timely informing tenants who had a rent determination or redetermination of their right to request a hearing in violation of HUD regulations.

87.     **Typicality & Adequacy.** Both classes of Plaintiffs' claims are typical as to those of the class and do not present claims that are unique to themselves. Plaintiffs' claims arise from the same policies that OHA had in place regarding each respective class for hardship exemptions and adverse actions. Almost all minimum rent tenants would have been affected by OHA's "on demand" hardship exemption policy and may have applied for a hardship exemption had they been informed about it. Likewise, all tenants in the adverse action class have a similar claim where they may have asked for review of their rent determination had they been aware of the right to request a hearing. Plaintiff class representatives and class counsel will fairly and adequately protect the interests of OHA public tenants in their respective classes. Named Plaintiffs do not have any interests that conflict with those of other class members. By filing this action, Plaintiffs have expressed an interest in vindicating their rights, as well as the rights of all those similarly situated. Plaintiffs are represented by experienced counsel.

21

88.    **Injunctive & Declaratory Relief.** Pursuant to Rule 23(b)(2), OHA acted or refused to act on grounds that apply generally to both classes as a whole and final injunctive relief or declaratory relief is appropriate to each class. Without the issuance of injunctive relief, OHA will continue to financially benefit and tenants will continue to be forced to pay or owe overdue rent they were not required to pay, or they will be evicted.

89.    **Predominance.** Pursuant to Rule 23(b)(3), there are several key common questions in this litigation, including whether OHA violated its residents' rights to due process by failing to take steps that were reasonably calculated to inform them of their right to request hardship exemptions to the minimum rent; whether OHA violated its residents' rights to due process by failing to timely inform them of their right to have an informal or formal grievance hearing when their rent is determined or redetermined; whether OHA's "only on request" for the hardship exemption policy violates the Housing Act, see 42 U.S.C. § 1437a(a)(3)(B); whether OHA violates the Housing Act by failing to effectively inform its residents of their right to request hardship exemptions or the procedures for exercising that right; whether OHA breached its public housing lease with class members by determining rent amounts in violation of HUD regulations; whether OHA denied public housing tenants due process regarding their right to request a hearing for rent determinations or other charges against their accounts; and whether OHA breached its public housing lease with class members by not timely informing tenants who

22

had a rent determination or redetermination of their right to request a hearing in violation of HUD regulations.

90.    These common issues predominate over individualized questions such as the individual circumstances of each putative class member and the timing of their eligibility for any exemption to the minimum rent, making certification under Rule 23(b)(3) appropriate.

91.    **Superiority.** A class action to resolve the issues presented by the two classes is superior to piecemeal resolution of claims.[26] All class members are low income and lack the resources to adjudicate their individual claims, where there would run a risk of disparate case results. OHA's policies have been uniformly applied to the two classes.

## CAUSES OF ACTION

### COUNT 1 - VIOLATION OF THE UNITED STATES HOUSING ACT (HARDSHIP EXEMPTION)

42 U.S.C. § 1983, 42 U.S.C. § 1437a(a), and 24 C.F.R. § 5.630(b)

92.    All above allegations are renewed and incorporated here.

93.    OHA is a "person" within the meaning of 42 U.S.C. § 1983.

94.    Acting under the color of statutes, and its customs and policies, OHA has violated Plaintiffs' right to notice and consideration of the Hardship Exemption found under 42 U.S.C. § 1437a(a)(3) by:

---

[26] Rule 23(b)(3).

94.1. adopting and maintaining the "only on request" policy and thus failing to immediately grant hardship suspensions or exemptions when the facts warranting mandatory hardship suspensions or exemptions are known to OHA;

94.2. depriving public housing residents of meaningful and timely notice of their right to request a hardship exemption to the minimum rent; and

94.3. pursuing eviction actions against residents for nonpayment of the minimum rent.

95. As a result of Defendant's actions, Plaintiffs and the class members they seek to represent have been injured and suffer continuing injuries

*COUNT 2 – VIOLATION OF THE DUE PROCESS CLAUSE (HARDSHIP EXEMPTION)*

96. All allegations above are renewed and incorporated here.

97. OHA is a "person" within the meaning of 42 U.S.C. § 1983.

98. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law …." U.S. Const. amend. XIV, § 1.

99. Plaintiffs and class members have property rights in their leasehold interests, and in a system that produces a fair determination of their rent in times of financial hardship. As established by the Housing Act and its implementing regulations, 42 U.S.C. § 1437a(a)(3), 24 C.F.R. § 5.630, Plaintiffs have a legitimate

claim of entitlement to notice and consideration for a hardship exemption to the minimum rent requirement.

100.    Defendant, acting under the color of state law, deprived Plaintiffs and class members of their right to request a hardship exemption by failing to notify tenants in a reasonable and timely manner of their right to apply for a hardship exemption and by failing to maintain a system of rent calculation that fairly and lawfully determines rent in times of financial hardship;

101.    Defendant's actions have violated and continue to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

102.    The deprivations of Plaintiffs' rights are a consequence of Defendant's systemic policies, customs, and practices.

### COUNT 3 – BREACH OF CONTRACT (HARDSHIP EXEMPTION)

103.    All allegations above are renewed and incorporated here.

104.    Plaintiffs and putative class members entered into valid and enforceable lease agreements with OHA.

105.    At all times relevant to this Complaint, Plaintiffs and the putative class members materially abided by the terms and obligations of their lease agreements.

106.    Defendant OHA breached its duties under the lease agreement and failed to correctly compute each Plaintiffs and putative class members' rent pursuant to the United States Housing Act and its implementing regulations.[27]

---

[27] Id.

107.    Defendant OHA's breach of the lease agreement injured Plaintiffs and putative class by failing to grant them the hardship exemption, forcing them to pay more rent than they could afford, resulting in their eviction or putting them at risk of eviction and forcing them to choose between paying erroneously computed rent and basic necessities.

### COUNT 4 – VIOLATION OF UNITED STATES HOUSING ACT (ADVERSE ACTION)

42 U.S.C. § 1983, 42 U.S.C. § 1437d, and 24 C.F.R. § 966.4

108.    All allegations above are renewed and incorporated here.

109.    Defendant, acting under the color of statutes, ordinances, or regulations, has violated Plaintiffs and the putative class members' rights under 42 U.S.C. § 1437d, as implemented by 24 C.F.R. § 966.4, by failing to include information concerning the right to request a hearing for any adverse action including, but not limited to, rent determinations or rent re-determinations.

110.    Defendant injured and continue to injure Plaintiffs and putative class members by failing to offer or inform them of their right to request a hearing to dispute adverse actions.

### COUNT 5 - VIOLATION OF DUE PROCESS CLAUSE (ADVERSE ACTION)

111.    All allegations above are renewed and incorporated here.

112.    OHA is a "person" within the meaning of 42 U.S.C. § 1983.

113.    The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law …."[28]

114.    Plaintiffs and class members have property rights in their leasehold interests, and in a system that gives them a right to an informal or formal hearing as a result of an adverse action, such as a rent determination or redetermination.[29]

115.    Defendant, acting under the color of state law, deprived Plaintiffs and class members of their right to request an informal or formal hearing by failing to notify tenants in a reasonable and timely manner of their right to request a formal or informal hearing when there is an adverse action;

116.    Defendant's actions have violated and continue to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

117.    The deprivations of Plaintiffs' rights are a consequence of Defendant's systemic policies, customs, and practices.

*COUNT 6 - BREACH OF CONTRACT (ADVERSE ACTION)*

118.    All allegations above are renewed and incorporated here.

119.    Plaintiffs and putative class members entered into valid and enforceable leases agreements with OHA.

120.    At all times relevant to this Complaint, Plaintiffs and putative class members materially abided by the terms and obligations of their lease agreements.

---

[28] U.S. Const. amend. XIV, § 1.
[29] 42 U.S.C. § 1437d(k); 24 C.F.R. § 966.4(c)(4).

27

121.    Under these lease agreements, Plaintiffs and putative class members'
rent was to be determined "by OHA in compliance with HUD regulations and
requirements and in accordance with OHA's Admissions and Policy."[30]

122.    Defendant OHA breached its duties under the lease agreement and
failed to inform Plaintiffs and putative class members of their right to request a
hearing "regardless of whether the tenant's rent is decreased or increased."[31]

123.    Defendant OHA's breach of the lease agreement injured Plaintiffs and
putative class members by failing to inform them of their right to request a hearing
for adverse actions such as rent determinations or redeterminations.

## REQUESTS FOR RELIEF

124.    Plaintiffs respectfully request the Court:

124.1. Declare that Defendant OHA policies regarding the hardship
exemption violate the United States Housing Act;

124.2. Declare that Defendant OHA's policies regarding the hardship
exemption violate the Due Process Clause of the Fourteenth
Amendment of the United States Constitution;

124.3. Declare that Defendant OHA's hardship exemption policies
breached its duties under Plaintiffs' and putative class members'
lease agreements;

---

[30] Exhibit A, Housing Authority of the City of Omaha Residential Lease Agreement, p. 2, ¶ 5.
[31] Id., p. 4, ¶ d.

124.4. Declare that Defendant OHA's failure to include notice of
Plaintiffs' and putative class members' right to hearing in
adverse actions, including rent determinations, violate the
United States Housing Act;

124.5. Declare that Defendant OHA's failure to include notice of
Plaintiffs' and putative class members' right to hearing in
adverse actions, including rent determinations, violate the Due
Process Clause of the Fourteenth Amendment to the United
States Constitution;

124.6. Declare that Defendant OHA's failure to include notice of
Plaintiffs' and putative class members' right to a hearing in
adverse actions, including rent determinations, violated
Plaintiffs' and putative class members' lease agreements;

124.7. Enter a preliminary and permanent injunction, without bond (or
upon a nominal bond), enjoining Defendant from continuing to
have in place its "only on request" policy for the hardship
exemption, from failing to suspend or grant a hardship
exemption from the minimum rent when it knows of
circumstances justifying the suspension or exemption, and from
requiring any public housing resident to pay the minimum rent
without first providing that resident with adequate and timely

notice of the right to request, and the procedure for requesting, a hardship exemption to the minimum rent requirement;

124.8. Enter a preliminary and permanent injunction, without bond (or upon a nominal bond), enjoining Defendant from terminating any public housing resident's lease agreement for nonpayment of the minimum rent and requiring Defendant to withdraw any pending eviction actions and associated terminations of assistance based on nonpayment of the minimum rent;

124.9. Enter a preliminary and permanent injunction, without bond (or upon a nominal bond), enjoining Defendant from taking any adverse action against tenants, including for rent determination or rent redetermination, without providing tenants with an adequate and timely notice of an opportunity for an informal or formal hearing;

124.10.    Enter a preliminary and permanent injunction, without bond (or upon a nominal bond) enjoining Defendants from terminating any public housing resident's lease agreement for nonpayment of rent and requiring Defendant to withdraw any pending eviction actions and associated terminations of assistance based on nonpayment of rent until timely and adequate notice of an opportunity to request an informal or formal hearing is issued;

124.11.    Enter an order requiring Defendant to:

124.11.1.    Notify Plaintiffs' and the putative adverse action and minimum rent classes of their right to the hardship exemption and of their right to request an informal or formal hearing regarding an adverse action, including but not limit to a rent increase;

124.11.2.    Recalculate Plaintiffs' and putative *minimum rent class* members' rent and refund them the difference between minimum rent and the rent they actually owed if they had applied for the hardship exemption;

124.11.3.    Recalculate Plaintiff's and putative *adverse action class* members for the difference between what they were charged in rent and what they would have paid had they been given an opportunity to have a grievance informal or formal hearing;

124.11.4.    Refund any and all associated late fees, attorneys' fees, and any other charges and fees associated with nonpayment of rent; and

124.11.5.    File satisfaction of money judgments, stipulations, or agreed orders in eviction cases based upon nonpayment of rent the tenants did not owe under such recalculation.

124.12.    Award Plaintiffs' reasonable costs and attorneys' fees for this action pursuant to 42 U.S.C. 1988;

124.13.    Certify the Rule 23(b)(2) class defined above and appoint the undersigned counsel as class counsel;

124.14.    Certify the Rule 23(b)(3) class defined above and appoint the undersigned counsel as class counsel;

124.15.    Award Plaintiffs an incentive award for their time and service as class representatives;

124.16.    Any other relief the Court deems equitable and just.

## JURY DEMAND

125.    Plaintiffs respectfully request a trial by jury.

June 27, 2024

Plaintiffs and putative classes,

By:s/ *Pamela A. Car*
Pamela A. Car, #18770
William L. Reinbrecht #20138
Car & Reinbrecht, P.C., LLO
2120 S. 72nd Street #1125
Omaha, NE 68124
402-391-8484
pacar@cox.net

and

/s/ Diane K. Uchimiya
Diane K. Uchimiya, #27151
Christopher A. Mihalo, #24705
Mark D. Carraher, #25736
Catherine Mahern, #19939
Milton R. Abrahams Legal Clinic
2120 Cass Street

32

Omaha, NE 68178
402-280-3068
DianeUchimiya@creighton.edu
ChristopherMihalo@creighton.edu
MarkCarraher@creighton.edu
KateMahern@creighton.edu

 and

Katherine E. Walz
Marcus Segura
*Pro Hac Vice*
National Housing Law Project
1663 Mission Street, Suite 460
San Francisco, CA 94103
415-546-7000 ext. 3129
kwalz@nhlp.org
msegura@nhlp.org

 On behalf of the Plaintiffs
 And putative classes